**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cassidy Scruggs, | No. CV-22-00534-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Grand Canyon University, et al., | |
| Defendants. | |

Pending before the Court is Defendant Grand Canyon University's ("GCU") Motion for Summary Judgment (Doc. 29). The Motion has been fully briefed. (Doc. 32; Doc. 33.) For the following reasons, the Court will grant the Motion.

## I.      BACKGROUND

### A.      Factual History

In 2017, Plaintiff Cassidy Scruggs was admitted as an undergraduate student at GCU, and in 2019, she was admitted to GCU's nursing program. (Doc. 29 at 8; Doc. 32 at 5.) In her Complaint and Response, Scruggs states that she is a survivor of childhood metastatic stage four cancer and "experiences long-term side effects" from her chemotherapy treatment, radiation, and medical surgeries, and is consequently, "more at risk for several organ systems late effects and . . . increased risk of more severe effects of an illness such as strep throat." (Doc. 1 ¶¶ 11–13; Doc. 32 at 8.) Scruggs also suffers from "severe chronic constipation and slow gut," as other long-term effects of her cancer treatment. (Doc. 1 ¶ 14.)

As a student in GCU's nursing program, Scruggs was enrolled in a course titled "NSG-436 Leadership, Ethics, and Policy in Health Care" ("NSG-436") in the Fall semester of 2020. (Doc. 29 at 73–75, 84; Doc. 32-1 at 57, 84.) To pass this class, students are required to submit "Benchmark Assignments" and must receive a "minimum of 76% or a passing grade for each of the benchmark assignments." (Doc. 29 at 42.) The Benchmark Assignment at issue was due on November 1, 2020. (*Id.* at 44.)

Between October 31 and November 1, 2020, Scruggs was admitted to the Emergency Room due to a case of strep throat, constipation, and dehydration. (Doc. 29 at 69; Doc. 32-1 at 25–26.) Scruggs alleges that her preexisting conditions—namely her cancer treatment history—"severely worsened" her condition. (Doc. 1 ¶¶ 22–23.) On November 1, 2020, Scruggs messaged her NSG-436 professor, informing her that she was in the hospital and would not be able to submit the Assignment on time, to which her professor replied that she should contact GCU's Student Disability Services ("SDS"). (Doc. 29 at 82; Doc. 32-1 at 16–17.) On November 2, 2020, Scruggs emailed SDS. (Doc. 29 at 68.) On November 3, 2020, an SDS representative told Scruggs to submit an Absence Verification Form,[1] and that same day, she submitted the form along with other documentation and a note from her provider excusing her from school until November 4th. (*Id.* at 68–71.)

Scruggs alleges that as of November 4th, she "continued to be too ill to attend

---

[1] GCU's Absence Verification Policy provides:

> When students see a provider for illness, students must submit documentation to the Student Disability Services Office for verification, as a service to faculty. Provider documentation will be verified from the day seen, going forward, and may not be considered retroactively. Documentation must be submitted within 2 weeks from the first missed class and include date seen, dates excused, the signature of the provider, and list any specific restrictions . . . .

> Faculty make the determination of whether an absence is considered excused or unexcused based on the verification process.

(Doc. 29 at 22–23, 70.)

classes" and "had to have two enema procedures to obtain mild relief from her severe constipation." (Doc. 1 ¶ 30; Doc. 29 at 7.) Scruggs also claims that on November 6, 2020, she experienced "an allergic reaction to the antibiotics she was prescribed to treat the strep throat," and her symptoms persisted until November 9th when Scruggs returned to Urgent Care and received medication to treat the reaction. (Doc. 1 ¶¶ 31–36.) GCU alleges that Scruggs never submitted an Absence Verification Form for the dates she returned to the hospital, and therefore, her absences were not excused. (Doc. 29 at 7–8.)

Between November 6th and November 8th, Scruggs submitted various assignments. (Doc. 29 at 77–79.) Scruggs, however, did not submit the Benchmark Assignment until November 10, 2020. (Doc. 29 at 69, 76; Doc. 32-1 at 32.) Because her grade for the Assignment reflected a 0 out of 150, Scruggs alleges that she emailed her NSG-436 professor who told her that she "needed to file her forms with SDS to get the due date extended." (Doc. 1 ¶¶ 39–40.) Scruggs contends, however, that she already contacted SDS, and SDS never provided her a new deadline for the Assignment. (*Id.* ¶¶ 31, 35, 40.) Scruggs asserts that approximately one week later, her NSG-436 professor determined that "the Assignment was three days late," reducing Scruggs's grade by 30% pursuant to GCU's Late Policy.[2] (*Id.* ¶ 41.)

Because of the 30% deduction, Plaintiff received a failing grade in NSG-436 and was dismissed from GCU with only one semester left to obtain her nursing degree. (Doc. 29 at 2; Doc. 32 at 6.) Scruggs claims that as of late December, her school portal reflected a passing grade in NSG-436, and therefore, she did not learn of the failing grade and dismissal until she returned to GCU's campus on January 2, 2021. (Doc. 1 ¶¶ 42–44.) Upon this discovery, Scruggs emailed her NSG-436 professor on January 5, 2021, and was told

---

[2] GCU's Late Policy provides in relevant part:

> All assignments are due before midnight Arizona time on the due dates indicated. Assignments posted after the indicated due dates will be subject to a deduction of 10% of the available points for each day late. No assignment can be accepted for grading after midnight on the final day of class.

(Doc. 29 at 23.)

1    that she should submit medical documentation to SDS that would either approve or

2    disprove of the grade change. (Doc. 32-1 at 36–38.) Scruggs submitted medical

3    documentation to SDS the following day. (*Id.* at 38–40.)

4          On January 8, 2021, Scruggs claims she submitted an appeal to GCU, which was

5    denied three days later. (Doc. 1 ¶ 47.) On January 29, 2021, Scruggs claims she submitted

6    a second appeal with additional evidence of her medical condition, which GCU again

7    denied on April 5, 2021. (*Id.* ¶¶ 48–49.)

8          In July 2022, Scruggs enrolled at Portland State University and graduated with her

9    bachelor's degree in general sciences in March 2023. (Doc. 32-1 at 11–12.) Because her

10    nursing credits from GCU's dual program did not transfer, Scruggs would need to restart

11    the program entirely to obtain her nursing degree. (*Id.* at 12–13.)

12    **B.**     **Procedural History**

13          Scruggs's Complaint alleges six causes of action against GCU for (1) violating Title

14    III of the Americans with Disabilities Act ("ADA"); (2) violating Section 504 of the

15    Rehabilitation Act; (3) breach of contract; (4) breach of the implied duty of good faith and

16    fair dealing; (5) unfair and deceptive trade practices in violation of A.R.S. § 44-1522; and

17    (6) negligence. (Doc. 1.)

18          On July 14, 2023, GCU moved for summary judgment on all claims. (Doc. 29.) On

19    September 15, 2023, Scruggs filed her response. (Doc. 32.) GCU filed its reply on October

20    2, 2023. (Doc. 33.)

21    **II.**    **STANDARD OF REVIEW**

22          A court must grant summary judgment "if the movant shows that there is no genuine

23    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

24    Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In

25    order to carry its burden of production, the moving party must either produce evidence

26    negating an essential element of the nonmoving party's claim or defense or show that the

27    nonmoving party does not have enough evidence of an essential element to carry its

28    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210

F.3d 1099, 1102 (9th Cir. 2000). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine*, 210 F.3d at 1102–03. But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The nonmovant need not establish a material issue of fact conclusively in its favor. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). However, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need not consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   DISCUSSION

### A.   Counts I and II: ADA and Rehabilitation Act Claims

GCU first moves for summary judgment on Scruggs's claims for disability discrimination under the ADA and the Rehabilitation Act. (Doc. 29 at 9–13.) Title III of the ADA provides, in part: "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A place of "public accommodation" includes an educational institution such as a private undergraduate or postgraduate school. *See id.* § 12181(7)(J). Likewise, Section 504 of the Rehabilitation Act mandates: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Given the similarity between the two statutes, courts apply the same analysis to claims brought under both the ADA and the Rehabilitation Act.[3] *See Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); *see also Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995), *cert denied*, 516 U.S. 1048 (1996) ("The legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA."). Accordingly, the Court examines Scruggs's ADA and Rehabilitation Act claims jointly.

To make a prima facie case under either the ADA or Section 504 of the Rehabilitation Act, Scruggs must show that (1) she is disabled; (2) she is "otherwise qualified" to remain a student at GCU; (3) she was dismissed solely because of her disability; and (4) GCU receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *Zukle*, 166 F.3d at 1045. The Plaintiff bears the initial burden in showing that she is otherwise qualified to remain a student, and that a reasonable accommodation exists that would allow her to meet the institution's "essential eligibility requirements." *Id.* at 1047. If a plaintiff carries her burden, then the burden shifts to the defendant to show that the requested accommodation would require a

---

[3] In its Reply, GCU argues that Scruggs has conceded dismissal of her ADA claim because she "combine[d] the Rehabilitation Act and [ADA] into one section instead of addressing them separately" and cited to "Title II" instead of "Title III" of the ADA. (Doc. 33 at 1–2.) Because courts analyze claims brought under each statute similarly, the Court finds that Scruggs has not abandoned her ADA claim.

"fundamental or substantial modification of its program or standards." *Id.*

The parties agree that GCU is a place of public accommodation that receives federal funds. (*See* Doc. 29; Doc. 33.) The parties disagree, however, as to (1) whether Scruggs is disabled under 42 U.S.C. § 12102; (2) whether GCU discriminated against Scruggs on the basis of her disability; and (3) whether Scruggs needed accommodations to pass her class. (*Id.*)

The ADA defines a "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1); *see also* 34 C.F.R. § 104.3(j)(1) (providing an identical definition under the Rehabilitation Act). Under this definition, a plaintiff claiming disability must demonstrate: (1) an impairment, (2) that substantially limits, (3) a major life activity. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022).

Federal regulations explain that a "physical or mental impairment" may include: "contagious and noncontagious diseases and conditions such as the following: Orthopedic, visual, speech and hearing impairments, and cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia and other specific learning disabilities." 28 C.F.R. § 36.105(b)(2). To be considered substantially limiting, "[a]n impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity." 28 C.F.R. § 36.105(d)(1)(v). A "major life activity" is defined as either (1) an activity such as seeing, eating, sleeping, breathing, or learning, for instance, or (2) a major bodily function. 42 U.S.C. § 12102(2). The ADA explains that a "major bodily function" includes "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.*

In this case, Scruggs contends that she is disabled under the ADA because her

1   "exposure to chemotherapy and radiation at seven years old, as well as the removal of [her]

2   kidney, and the partial removal of [her] left lung, have damaged several of [her] major

3   bodily functions." (Doc. 1 ¶ 58.) Given her intensive childhood cancer treatment, Scruggs

4   argues that she has a permanently weakened immune system, along with severe chronic

5   constipation and slow gut, and this qualifies her as disabled under the ADA and the

6   Rehabilitation Act. (*Id.*; Doc. 32 at 8.) In the pending Motion, GCU does not mention the

7   word "cancer" once, nor does GCU even remotely discuss Scruggs's history of treatment,

8   radiation, and medical surgeries for her cancer diagnosis. (*See* Doc. 29.) Rather, GCU

9   argues that Scruggs's "temporary sickness for strep, constipation and dehydration does not

10   qualify as a disability."[4] (*Id.* at 9.)

11       Regardless of whether Scruggs's cancer diagnosis qualifies as a disability, Scruggs

12   has not made out a prima facie case of disability discrimination under the ADA or Section

13   504. There is no evidence in the record to suggest that GCU knew of Scruggs's cancer

14   diagnosis or that she has a permanently weakened immune system caused by her

15   chemotherapy treatment. In fact, the overwhelming evidence in the record supports the

16   inverse inference. In her own deposition testimony Scruggs admits: (1) she never

17   mentioned her disability when she informed her NSG-436 professor that she was in the

18   hospital (Doc. 32-1 at 17); (2) she never mentioned her disability when she submitted

19   medical documentation for her absence (*Id.* at 21–22, 26–27); (3) she never mentioned her

20   disability in her correspondence with SDS (*Id.* at 24); and (4) she never mentioned her

21   disability when her professor informed her that she had not turned in the Benchmark

22   Assignment (*Id.* at 32–33). Moreover, Scruggs agrees that before her allergic reaction to

23   the medicine, "no sickness or disability" prevented her from completing other schoolwork.

---

[4] GCU is correct in that, "[t]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (citing 29 C.F.R. Pt. 163 App., § 1630.2(j)). The Ninth Circuit has determined, however, that the "temporal duration of an impairment is merely one factor to be considered." *Gage v. Midwestern Univ.*, No. 22-15227, 2022 WL 9904311 (9th Cir. Oct. 17, 2022) (citing *Shields*, 32 F.4th at 1227). Regardless, Scruggs's disability claim fails because the record indicates that GCU had no basis to know Scruggs was disabled, and Scruggs does not contend that her strep throat, dehydration, and constipation are themselves disabilities.

(*Id.* at 66–71.) Scruggs has not provided any evidence that GCU knew of her disability. Without knowledge, GCU cannot be found to have discriminated *on the basis* of Scruggs's disability. 42 U.S.C. § 12182(b)(1)(e); *see also Doe ex rel. Doe v. State of Hawaii Dep't of Educ.*, 351 F. Supp. 2d 998, 1013 (D. Haw. 2004) (holding that "no reasonable fact finder could determine that [the defendants] acted solely on the basis of [plaintiff's] disability, given the complete lack of knowledge of the disability on their part").

At oral argument, Scruggs argues—for the first time—that the medical documentation policy was confusing, and that she believed she substantially complied with its requirements. But the evidence in the record indicates that Scruggs was familiar with GCU's absence verification policy, as she had used it to her benefit in the past. (Doc. at 69–71.) However, even assuming she had strictly adhered to GCU's policies, her ADA and Section 504 claims nonetheless fail because Scruggs cannot make out a prima facie case of disability discrimination for the reasons set forth above. Accordingly, the Court will grant summary judgment as to Scruggs's ADA and Rehabilitation Act claims.

### B.   Count III: Breach of Contract

GCU also moves for summary judgment on Scruggs's breach of contract claim. (Doc. 29 at 13.) Under Arizona law, the elements of a breach of contract claim are: (1) the existence of the contract, (2) its breach, and (3) the resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). For contract claims in an educational setting, most jurisdictions recognize that:

> The relationship between a student and a college or university is essentially contractual in nature, but the relationship has unique qualities that require courts to construe the contract in a manner that leaves the school administration broad discretion to meet its educational and doctrinal responsibilities and thus does not require strict adherence to contract law.

14A C.J.S. Colleges and Universities § 30 (Aug. 2023 update) (citing cases). Arizona law generally permits breach of contract claims by students against undergraduate universities. *See, e.g.*, *Snyder v. Ariz. Bd. of Regents*, No. 1 CA-CV 14-0536, 2015 WL 7777075, at *4 (Ariz. App. Dec. 3, 2015) (affirming summary judgment against student on breach of

1   contract claim because university fulfilled its alleged oral contract to discuss the student's
2   possible admission to the program); *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp.
3   3d 1087, 1096–97 (D. Ariz. 2021) (holding that students stated a claim for breach of
4   contract against university related to housing costs and fees); *Little v. Grand Canyon Univ.*,
5   516 F. Supp. 3d 958, 964–65 (D. Ariz. 2021) (similar to *Hannibal-Fisher*).

6          The parties do not dispute the contractual nature of their relationship. They disagree,
7   however, as to whether GCU breached a specific promise to Scruggs. Scruggs identifies
8   the GCU's Student Handbook as the contract at issue. (Doc. 1 ¶¶ 69–74.) According to
9   Scruggs, GCU breached the "Notice of Non-Discrimination" included in the Handbook,
10  which provides in relevant part, "Grand Canyon University does not discriminate on the
11  basis of age, race, color, national origin, gender, disability, or any other classification
12  protected by law in its programs and activities." (*See* Doc. 1 ¶¶ 70, 73; Doc. 32 at 11.)
13  Scruggs argues that this was a "specific promise" GCU made to Scruggs and subsequently
14  breached when she was discriminated against based on her disability. (*Id.*) In its Motion,
15  GCU argues that it did not breach the Handbook because it did not discriminate against
16  Scruggs.[5] (Doc. 29 at 13–14.)

17         While no Arizona caselaw directly speaks to the issue, other jurisdictions have held
18  that plaintiffs cannot bring a breach of contract claim based solely on a violation of an
19  anti-discrimination policy. *See, e.g.*, *Jones v. George Fox Univ.*, No. 3:19-CV-0005-JR,
20  2021 WL 1414280, at *7 (D. Or. Feb. 3, 2021), *report and recommendation adopted*, No.
21  3:19-CV-00005-JR, 2021 WL 1414202 (D. Or. Apr. 14, 2021) (explaining that a plaintiff
22  "may seek a remedy for any alleged discrimination or retaliation under state and federal
23  laws prohibiting discrimination, but she may not seek redress through a breach of contract
24  claim"); *Ferrera v. Bd. of Gadsden Indep. Sch. Dist.*, No. CIV-11-0053-MV-LAM, 2013

---

25
26  [5] In her Complaint, Scruggs initially alleged two grounds for GCU's breach: the first based
    on disability discrimination, and the second based on GCU's failure to inform her of a new
27  deadline for the Benchmark Assignment. (Doc. 1 ¶¶ 69–74.) In her Response, however,
    Scruggs abandons the second argument and presents no evidence as to whether the
28  Handbook promises to provide disabled students with new deadlines. (Doc. 32 at 10–11.)
    As a result, the Court will only consider whether GCU's alleged disability discrimination
    constitutes a breach of the Handbook.

WL 12200525, at *3 (D.N.M. Aug. 8, 2013) (holding that the "failure to comply with the ADA or the FMLA cannot provide a basis for [a] breach of contract claim"); *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 254 (D. Conn. 2008) (recognizing that an "anti-discrimination policy" does not indicate that an employer is undertaking any contractual obligations toward the employee; rather it requires the employer "to comply with federal and state anti-discrimination laws").

For instance, in *Jones*, the plaintiff, a student of George Fox University, sued the college for disability discrimination in violation of the ADA, retaliation, breach of contract, and breach of the duty of good faith and fair dealing. 2021 WL 1414289, at *1. There, the university's graduate catalogue and student life policy contained a non-discrimination provision. *Id.* at *5. The plaintiff based her breach of contract claim exclusively on the argument that the university violated this nondiscrimination provision. *Id.* at *7. The court explained that under Oregon law, the student-college relationship is treated as contractual, and terms within a university handbook or course catalogue may be enforceable depending on the circumstances. *Id.* In granting the university summary judgment, the court reasoned:

> [The] plaintiff attributes these actions to discriminatory and retaliatory motives in breach of an anti-discrimination contract provision that does not exist or at least does not bind the University. This is not to say that the University is free to discriminate or retaliate against plaintiff as it is still bound by laws prohibiting such conduct and indeed the Handbook confirms as much. Plaintiff may seek a remedy for any alleged discrimination or retaliation under state and federal laws prohibiting discrimination, but she may not seek redress through a breach of contract claim.

*Id.*

The circumstances in this case are similar. Scruggs alleges a breach of contract claim based on a violation of the nondiscrimination provision in GCU's Handbook. (*See* Doc. 1 ¶¶ 68–75; Doc. 32 at 10–11.) Because the nondiscrimination provision is the exclusive basis for this claim, summary judgment is appropriate. Scruggs's alleged injuries are redressable under the ADA and Rehabilitation Act. "[D]ecisions from other jurisdictions"—such as *Jones* cited above—provide "guidance" to a federal court sitting in

diversity in the absence of a "decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990). The Court agrees with the reasoning of these courts and will grant summary judgment as to Scruggs's breach of contract claim.

### C.   Count IV: Breach of Duty of Good Faith and Fair Dealing

GCU also moves for summary judgment on Scruggs's breach of good faith and fair dealing claim, which mirrors her breach of contract claim. (Doc. 29 at 15.) Scruggs, however, did not address this claim in her Response. (*See* Doc. 32.) A plaintiff's failure to address a claim on a motion for summary judgment serves as the plaintiff abandoning that claim. *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (affirming summary judgment on a claim because the plaintiff "abandoned th[e] claim by failing to raise it in opposition to the [defendant's] motion for complete summary judgment"). Accordingly, the Court will grant GCU summary judgment as to Scruggs's claim that GCU breached the implied covenant of good faith and fair dealing.

### D.   Count V: Unfair Trade Practices

GCU argues that summary judgment is appropriate as to Scruggs's claim for unfair trade practices in violation of the Arizona Consumer Fraud Act ("ACFA"). (Doc. 29 at 13.) The ACFA provides:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-152(A). "Arizona courts construe the ACFA to provide a right of action on any person damaged by a violation of the Act." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016) (citing *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974)). Although the ACFA is limited to the sale or advertisement of merchandise, the Act defines "merchandise" as including "intangibles" and "services." A.R.S. § 44-1521(5). In the university setting, courts interpreting the ACFA have

recognized that a student may bring a consumer fraud claim against a university for its alleged misrepresentations. *See Lorona v. Ariz. Summit L. Sch., LLC*, 188 F. Supp. 3d 927, 935–37 (D. Ariz. 2016) (holding that a student adequately pled a claim for fraud, including allegations of consumer fraud, based on misrepresentations regarding the law school's enrollment statistics). "To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). "A misrepresentation causes injury where the consumer actually relies on it." *Cheatham*, 161 F. Supp. 3d at 825–26.

GCU argues that it is entitled to summary judgment because Scruggs's unfair trade practices claim is "solely related to allegations of disability discrimination" and "GCU did not discriminate against [Scruggs]." (Doc 29 at 13.) In her Response, Scruggs contends that GCU violated A.R.S. § 44-152(A) on two occasions: first, when it falsely represented that Scruggs's credits would be transferable, and second, when it falsely "represented that Plaintiff would obtain an education free of discrimination, harassment, and retaliation." (Doc. 32 at 10.) The Court addresses each in turn.

As to the first basis, Scruggs has not presented any evidence that GCU falsely represented that her credits would be transferable. Scruggs relies exclusively on her deposition testimony, which is summarized below:

> Q: Did you try to study nursing at Portland State University?
>
> A: I looked into nursing schools, but I would have·had to start completely over, so I decided to go a different route to get my Bachelor's.
>
> Q: . . . How many schools did you look at in terms of whether you would have to start all over for nursing degree?
>
> A: Three, I believe.
>
> Q: Okay. And which schools were those?
>
> A: I looked at Linfield, George Fox, OHSU's program, and I think that's it.
>
> [ . . . . ]

Q: . . . Those are the only three colleges or universities that you looked into in terms of whether or not credits would transfer or you'd have to start all over?

A:·I believe so, yes.

Q: Okay. And they all told you you'd have to start all over?

A: Yes.

(Doc. 32-1 at 13–14.)

This deposition testimony—which appears to be the *only* evidence offered on this issue—indicates that other universities would not accept Scruggs's transfer credits from GCU. It does not evidence whether GCU made a misrepresentation to Scruggs. Without any additional evidence that GCU represented the transferability of her credits, Scruggs has failed to show the existence of a genuine dispute of material fact precluding summary judgment.

Scruggs also contends that GCU violated the ACFA when it falsely represented that Scruggs would obtain an "education free of discrimination, harassment, and retaliation." (Doc. 32 at 10.) But Scruggs has not presented any evidence that she "actually relied" on this representation. Nondiscrimination clauses, such as the one presented here, are ubiquitous. Indeed, federal regulations require universities like GCU to routinely provide notice that "it does not discriminate on the basis of handicap in violation of section 504." 34 C.F.R. § 104.8(a). Because Scruggs has not presented evidence that she relied on GCU's nondiscrimination provision, the Court will grant summary judgment as to her consumer fraud claim.

### E.      Count VI: Negligence

Lastly, GCU contends that summary judgment is appropriate as to Scruggs's negligence claim. (Doc. 29 at 17.) "[A] a negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 366 (Ariz. 1985). Whether a duty exists is a question of law decided by the court. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).

1   "If no duty is present, the defendant is not liable even though he may have acted negligently

2   in light of foreseeable risks." *Bogue v. Better Bilt Aluminum Co.*, 875 P.2d 1327, 1339

3   (Ariz. Ct. App. 1994).

4           "The student-school relationship is one that can impose a duty within the context of

5   the relationship." *Monroe v. Basis Sch., Inc.*, 318 P.3d 871, 873 (Ariz. Ct. App. 2014).

6   Arizona courts have generally imposed a duty for on-campus activities in the primary and

7   secondary school context because there is a "custodial relationship." *Id.* at 873–74; *see also*

8   *Dinsmoor v. City of Phoenix*, 492 P.3d 313, 317 (Ariz. 2021) (reasoning that the duty

9   imposed on schools "recognizes that the school 'is a custodian of students'") (citing

10  Restatement (Third) of Torts: Liability for Physical Harm § 40 cmt. 1 (2012)). The

11  university setting, however, provides a different environment, and courts in other

12  jurisdictions "are split on whether a college owes an affirmative duty to its students."

13  Restatement § 40 cmt. 1 (2012) (citing cases). Arizona courts, however, have recognized

14  that a university owes its students a duty of reasonable care for on-campus activities. *See*

15  *Jesik v. Maricopa Cnty. Cmty. Coll. Dist.*, 611 P.2d 547, 550 (Ariz. 1980) (recognizing that

16  a community college had a duty to exercise reasonable care in protecting a student); *see*

17  *also Delbridge v. Maricopa Cnty. Cmty. Coll. Dist.*, 893 P.2d 55, 57–59 (Ariz. Ct. App.

18  1994) (holding that a college owed a student a duty "to avoid exposing him to an

19  unreasonable). *But see Boisson v. Arizona Bd. of Regents*, 343 P.3d 931, 935 (Ariz. Ct.

20  App. 2015) (acknowledging that there was "no Arizona case addressing whether a college

21  or university owes its students a duty of reasonable care for off-campus activities").

22          Scruggs argues that GCU had a duty to offer reasonable accommodations because

23  GCU knew of her disabilities. (Doc. 32 at 12.) Scruggs, however, does not cite any Arizona

24  caselaw suggesting that universities have a duty to take affirmative steps in accommodating

25  a student with disabilities. Without more robust support, this Court is not inclined to

26  recognize this duty here. The ADA prescribes the remedy for Scruggs's alleged injuries.

27  Consequently, Scruggs is not entitled to pursue a negligence claim merely for negligently

28  complying with the ADA. *See, e.g.*, *Rogers v. W. Univ. Health Scis.*, No. CV-16-07681-

MWF-AGRX, 2017 WL 11567381, at *1 (C.D. Cal. Jan. 17, 2017) (holding that a "[p]laintiff cannot state a claim for negligence or negligence per se based solely on the violation of certain antidiscrimination statutes"). For these reasons, the Court will grant GCU summary judgment as to Scruggs's negligence claim.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 29). The Clerk of the Court shall enter judgment in Defendant's favor on all of Plaintiff's claims and close this case.

Dated this 21st day of November, 2023.

Michael T. Liburdi
United States District Judge